# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE SCENIC RIVERS ASSOCIATION and SIERRA CLUB, ) ) ) Plaintiffs, ) ) ) v. ) ) WATER AND WASTEWATER ) AUTHORITY OF WILSON COUNTY, ) and ADENUS OPERATIONS, LLC, ) ) Defendants. ) | Case No.: 3:25-cv-01145 Judge Richardson |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants Water and Wastewater Authority of Wilson County ("WWAWC") and Adenus Operations, LLC ("Adenus") submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court lacks jurisdiction over the claims asserted by Plaintiff Tennessee Scenic Rivers Association ("TSRA") because TSRA lacks standing. In addition, the Complaint fails to state a claim upon which relief can be granted for alleged violations of the Clean Water Act.

### BACKGROUND[1]

In general, the Clean Water Act ("CWA" or the "Act") prohibits the discharge of pollutants into navigable waters in the absence of an appropriate permit. 33 U.S.C. § 1311(a). The Act requires a permit when there is a direct discharge from a point source into navigable waters or when there is the functional equivalent of a direct discharge. *City of Maui v. Hawaii Wildlife Fund*,

---

[1] Solely for purposes of the motion to dismiss under Fed. R. Civ. P. 12(b)(6), the factual allegations of the Amended Complaint are treated as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009).

590 U.S. 165, 183 (2020). The required permit is called a National Pollutant Discharge Elimination System (NPDES) permit. An NPDES permit allows the discharge of pollutants through a point source into waters of the United States, subject to permit limitations on what may be discharged as well as monitoring and reporting requirements. https://www.epa.gov/npdes/npdes-permit-basics (viewed 12/22/25).

The CWA defines "navigable waters" as "waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). Waters of the United States "include[] only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams[,]… oceans, rivers, [and] lakes.'" *Rapanos v. United States*, 547 U.S. 715, 739 (2006) (internal citation omitted). Apart from its protection of "navigable waters," i.e. waters of the United States, the Act "protect[s] the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution" and to plan the development and use of "water resources." 33 U.S.C. § 1251(b). In other words, as to groundwater pollution or nonpoint source pollution, or pollution that reaches navigable waters after traveling through groundwater where the discharge is not the functional equivalent of a direct discharge from the point source, the Act leaves substantial responsibility and autonomy to the States. *City of Maui*, 590 U.S. at 174, 186.[2]

Plaintiffs named two Defendants: WWAWC and Adenus. [Doc. No. 21 ¶¶23-24]. WWAWC is a utility that provides water and wastewater services to parts of Wilson County. [*Id.* ¶ 23]. Adenus, under contracts with WWAWC and other similar entities, operates various wastewater treatment facilities. At issue is a wastewater treatment facility (the "Ridgewater

---

[2] The "functional equivalent" standard in *City of Maui* is a means of addressing circumstances where pollutants reach navigable waters via an indirect route and not via a direct discharge into covered waters. *City of Maui*, 590 U.S. at 187-88 (Kavanaugh, J., concurring) (citing *Rapanos v. United States*, 547 U.S. 715, 743 (2006) (plurality opinion).

2

Facility" or the "Facility") owned by WWAWC and operated by Adenus that collects domestic sewage from two subdivisions in Mount Juliet - Ridgewater Estates and Camelot Cove. [*Id*. ¶¶23-24, 46]. The Facility utilizes a wastewater treatment method called decentralized drip dispersal. [*Id*. ¶1-2]. Decentralized drip dispersal is an alternative to conventional wastewater treatment systems involving septic tanks and drain fields. [*Id*. ¶37]. Decentralized drip dispersal "can provide wastewater collection and treatment for up to several hundred homes in subdivision developments." [*Id*. ¶37]. The method works by collecting sewage from residences, circulating it through sand filter to remove solids and contaminants, and then piping the treated wastewater it into an area of land called a "drip field." [*Id*. ¶38]. In that field, drip lines that are buried underground release the treated wastewater into the soil, where it filters through the soil and is consumed by soil-residing organisms. [*Id*. ¶38].

This is a citizen suit under Section 505(a)(1) of the CWA. [Id. ¶1]. 33 U.S.C. § 1365(A)(1). That Section gives individuals a private right of action against any person or agency "who is alleged to be in violation of (A) an effluent standard or limitation under [the] Act or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.]" 33 U.S.C. § 1365(a)(1). Plaintiffs TSRA and Sierra Club claim associational standing to maintain this citizen suit. TSRA is a member organization with approximately 600 members, including members who own property and live by the Ridgewater Facility, as well as members who have interests in navigable waters near the Ridgewater Facility. [Doc. No. 21 ¶12]. Angela Stalcup is identified in the Amended Complaint as a TSRA member who resides in the Ridgewater Estates subdivision on property adjacent to the Ridgewater Facility and claims to be harmed by the matters complained of. [Id. ¶13]. Sierra Club is a member organization with over 600,000 members nationwide, including approximately 7,250 members in Tennessee. [Id. ¶17]. Cris Corley is a Sierra Club

member who resides near Old Hickory Lake, has recreational interests in Old Hickory Lake, and claims to be harmed by the matters complained of. [Id. ¶18].

The discharge of wastewater to surface waters or waters of the state is regulated by the Tennessee Water Quality Control Act, not the CWA. The Tennessee Department of Environment and Conservation (TDEC) issues permits, referred to as State Operating Permits or SOPs, for the operation of wastewater treatment facilities like the Ridgewater Facility pursuant to the Tennessee Water Quality Control Act, Tenn. Code Ann. §§ 69-3-101 *et seq*. [*Id*. ¶41]. An SOP is distinct from an NPDES permit. [*Id*. ¶51]. An NPDES regulates the discharge of pollutants from a point source into waters of the United States, which is controlled by the CWA.

The Amended Complaint describes a 2024 TDEC statewide investigative survey of approximately 360 decentralized drip dispersal facilities in Tennessee in which the Ridgewater Facility was allegedly identified by TDEC as suffering from significant design and operational problems. [*Id*. ¶¶43-45]. The Amended Complaint then describes various TDEC inspections of the Ridgewater Facility on dates beginning March 3, 2021, and continuing through September 26, 2025. [Id. ¶¶56-88]. The inspections, as described by Plaintiffs, principally included findings of discharges to surface waters regulated by state law.

The CWA violations alleged in this case, on the other hand, are premised upon the alleged discharge of polluted wastewater from the Ridgewater Facility into an unnamed tributary of the Cumberland River at Old Hickory Lake (the "Unnamed Tributary"). [Id. ¶1]. The Cumberland River at Old Hickory Lake fits within the definition of "navigable waters," i.e. waters of the United States, and the Unnamed Tributary is a creek that flows to those waters. [Id.]. According to the Amended Complaint, testing of water in the Unnamed Tributary downstream of the Ridgewater

Facility for pollutants has been conducted twice, on April 24, 2025, and July 8, 2025. [Id. ¶¶93-94]. That sampling showed elevated *E. coli* levels in the Unnamed Tributary. [Id.].[3]

## LAW AND ARGUMENT

### I. TSRA lacks standing, and its claims should be dismissed under Rule 12(b)(1) for lack of jurisdiction.

Angela Stalcup is the only individual TSRA member identified in the Amended Complaint. Ms. Stalcup could not assert the claims in the Amended Complaint in her own right. Since TSRA has not identified any of its members who could assert its claims in their own right, TSRA does not have associational standing to assert those claims, and its claims must therefore be dismissed for lack of jurisdiction.

Article III of the Constitution limits the federal judicial power to "cases" or "controversies," thereby requiring as an "irreducible minimum" that there be (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision. *United Food & Commercial Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 551 (1996). Article III standing is constitutional, not merely prudential.

An association has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested

---

[3] The Amended Complaint includes allegations of testing in an "Existing Drainage Ditch" and a "Newly Constructed Trench," which purportedly flow to the Unnamed Tributary, that revealed not only elevated *E. coli* levels but also elevated levels of Total Coliform and Phosphorus. [Id.]. There is no allegation, however, that levels of Total Coliform and Phosphorus were elevated in the Unnamed Tributary. [Id.]. In the July 8, 2025, sampling, the *E. coli* levels in the Unnamed Tributary were substantially *higher* than the *E. coli* levels in the Existing Drainage Ditch and the Newly Constructed Trench. [Id. ¶94].

5

requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). The *Hunt* standards for associational standing address the first Article III requirement for constitutional standing. The first Article III requirement (injury in fact) is satisfied by requiring that an organization suing as a representative include at least one member with standing to present, in his or her own right, the claim or type of claim pleaded by the Association. *United Food & Commercial Workers*, 517 U.S. at 555.

The organization relying on associational standing must plead more than a likelihood that the defendant's conduct will harm some unknown member. The organization must identify a member who has suffered or is about to suffer a concrete and particularized injury from the defendant's conduct. *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 542-43 (6th Cir. 2021); *see also Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 253 (6th Cir. 2018) ("[S]tanding is not dispensed in gross . . . just as an individual must demonstrate standing for each claim he seeks to press and for each form of relief sought, so too must an association that relies upon an individual member for standing purposes.") (internal citations and quotations omitted).

To satisfy the pleading requirements for associational standing under Article III, TSRA identifies Angela Stalcup as a member of TSRA who allegedly has suffered or is about to suffer injury from Defendants' operation of the Ridgewater Facility. [Doc. No. 21 ¶¶13-14]. However, as a Ridgewater Estates property owner whose wastewater services are provided through the Ridgewater Facility, Angela Stalcup signed a Sewer Service Contract with WWAWC. A copy of Ms. Stalcup's contract with WWAWC is attached as Exhibit A to the Declaration of Chris Leauber. [Doc. No. 19-1].[4] In that contract, Ms. Stalcup agreed to several key provisions: Section 10

---

[4] A motion to dismiss for lack of jurisdiction is governed by Rule 12(b)(1), not Rule 12(b)(6). *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). Under Rule 12(b)(1), the Court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction,

6

Case 3:25-cv-01145    Document 25    Filed 12/29/25    Page 6 of 12 PageID #: 276

(WWAWC is not bound to supply any level of quality of sewage treatment and is not liable to Consumer for failure to supply sufficient sewage collection and treatment services; if WWAWC transfers responsibility to a separate entity (i.e., Adenus), all rights accruing to WWAWC are transferred to that entity); Section 16 (Consumer waives and holds WWAWC harmless for claims against WWAWC for damages resulting from any action whatsoever or howsoever taken by WWAWC in the installation, inspection, maintenance or repair of the sewage system); and Section 17 (Consumer has no right to compel by injunction that the WWAWC furnish sewage and treatment services, nor is WWAWC liable in damages to Consumer for failure to furnish such service or an adequate level of service). [*Id.*].

Angela Stalcup could not assert the CWA claims in this case in her own right. *United Food & Commercial Workers*, at 555. She would be barred from doing so by her contractual waivers in her Sewer Service Contract. TSRA has not identified a member who could assert the claims of TSRA in his or her own right. TSRA therefore has not sufficiently pled the necessary elements of associational standing. "[S]tanding is not dispensed in gross," *Waskul*, 900 F.3d at 253. The Court lacks jurisdiction over TSRA's claims.

II. **Plaintiffs' claims for alleged violations of the CWA should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.**

After describing various TDEC inspections of the Ridgewater Facility dating back to March 3, 2021 [Doc. No. 21 ¶¶56-88], Plaintiffs claim that Defendants, on "every day since August of 2020 and on at least" the dates of the TDEC inspections, have discharged polluted wastewater into the Unnamed Tributary. [Doc. No. 21 ¶105]. Plaintiffs' cataloguing of various TDEC

---

and both parties are free to supplement the record by affidavits unless the basis of the motion is simply that sufficient facts have not been alleged. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

inspections are evidently intended to buttress Plaintiffs' claim. However, issues related to the SOP issued by TDEC for the Ridgewater Facility or related to Defendants' compliance with the requirements of that SOP do not establish violations of the CWA. The Amended Complaint alleges only two instances where TDEC allegedly found pollutants present in "navigable waters," or waters of the United States. Those two occasions were on April 24, 2025, and July 8, 2025, when water samples from the Unnamed Tributary were tested and found to contain elevated levels of *E. coli*. [Id., ¶¶93-94].

To survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 904 (6th Cir. 2020). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). While *factual* allegations are accepted as true, courts "need not credit a legal conclusion couched as a factual allegation or a naked assertion devoid of further factual enhancement." *United States of Am. ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 448 (6th Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 678); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"A CWA claim comes to life when five elements are present: (1) a *pollutant* must be (2) *added* (3) to *navigable waters* (4) *from* (5) a *point source*." *Ky. Waterways All. v. Ky. Utils. Co.*, 905 F.3d 925, 932 (6th Cir. 2018) (quoting *Nat'l Wildlife Fed'n v. Consumers Power Co.*, 862 F.2d 580, 583 (6th Cir. 1988)) (emphasis in original). Plaintiffs' allegations, other than those growing

8

Case 3:25-cv-01145   Document 25   Filed 12/29/25   Page 8 of 12 PageID #: 278

out of testing of water in the Unnamed Tributary, are not sufficient for other claims under the CWA to "come to life."

Plaintiffs' allegations related to those two dates when water in the Unnamed Tributary was tested illustrate the insufficiency under the CWA of Plaintiffs' allegations regarding all the other TDEC inspections. According to Plaintiffs, samples of water discharged from the Ridgewater Facility were taken on April 24, 2025, from the "Existing Drainage Ditch," the "Newly Constructed Trench," and the Unnamed Tributary. [Doc. No. 21 ¶93]. The samples from the Existing Drainage Ditch and the Newly Constructed Trench showed high levels of *E. coli* and Total Coliform. [*Id*.]. Yet, there is no allegation in the Amended Complaint that Total Coliform was found in the sample taken on April 24, 2025, from the Unnamed Tributary. [*Id*.]. Elevated *E. coli* was the only pollutant alleged to have been found in that sample. [*Id*.].[5]

The allegations regarding samples taken on July 8, 2025, show a similar inconsistency. Samples from the Existing Drainage Ditch and the Newly Constructed Trench taken on July 8 showed elevated levels of *E. coli*, Total Coliform, and Phosphorus. [*Id*. ¶94]. While sampling in the Unnamed Tributary revealed elevated *E. coli* levels, the Amended Complaint does not suggest that elevated levels of Total Coliform or Phosphorus were detected in that sample. [*Id*.].[6]

Also noteworthy, the July 8 sampling is alleged to have shown *E. coli* levels in the Unnamed Tributary greater than 2419 MPN/100 ml, levels substantially **higher** than those found

---

[5] According to the Amended Complaint, *E. coli* levels in the Existing Drainage Ditch and the Newly Constructed Trench were 5170 MPN/100 ml and 2910 MPN/100 ml in the two discharges on April 24, 2025, respectively; and the *E. coli* level in the Unnamed Tributary was 1920 MPN/100 ml that date. [Doc. No. 21 ¶93].

[6] According to the Amended Complaint, *E. coli* levels in the Existing Drainage Ditch and the Newly Constructed Trench were 1299 MPN/100 ml and 1046 MPN/100 ml in the two discharges on July 8, 2025, respectively; and the *E. coli* level in the Unnamed Tributary was 2419 MPN/100 ml that date. [*Id*. ¶94].

in samples from the Existing Drainage Ditch (1299 MPN/100 ml) and the Newly Constructed Trench (1046 MPN/100 ml). [*Id.*]. The higher *E. coli* levels in the Unnamed Tributary suggests the existence of some other source of pollutants besides the Ridgewater Facility.

To make their claims "come to life," Plaintiffs must allege violations of the CWA, not just violations of the requirements of Defendants' SOP. Plaintiffs must allege a discharge of pollutants into waters of the United States, not just ponding of water in a drip field. And the violations must be continuous or intermittent such that there is a reasonable likelihood that Defendants' pollution of waters of the United States will continue in the future. *Ailor v. City of Maynardville*, 368 F.3d 587, 597-98 (6th Cir. 2004) (relying on *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 59-61 (1987)). The only specific discharges of pollutants into the Unnamed Tributary alleged in the Amended Complaint were found via testing on April 24 and July 8, 2025. The inconsistencies between testing results for water samples taken from the Existing Drainage Ditch and the Newly Constructed Trench and testing results on the same dates for water samples taken from the Unnamed Tributary illustrate that pollution of water in the Unnamed Tributary cannot be presumed from whatever SOP violations TDEC might have found within the Ridgewater Facility.

Plaintiffs have not stated a plausible claim for relief for alleged CWA violations prior to the testing of water in the Unnamed Tributary on April 24, 2025. *Bell Atl. v. Twombly*, 550 U.S. at 570; *Tapply v. Whirlpool Corp.*, 148 F.4th 407, 413 (6th Cir. 2025). And for the period thereafter, Plaintiffs have not stated a plausible claim for relief for continuous or intermittent CWA violations when April 24, 2025, and July 8, 2025, are the only two dates when water in the Unnamed Tributary was tested and found to contain elevated levels of *E. coli*.

## CONCLUSION

Because of the waivers by Angela Stalcup, the claim of TSRA should be dismissed under Rule 12(b)(1).

Liberal construction of the pleadings "does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 Fed. Appx. 579, 580 (6th Cir. 2001). Plaintiffs have attempted to use TDEC inspection results to bolster their claim, but when the allegations of the Amended Complaint are considered in the context of the CWA and what the CWA does and does not regulate, only two discrete violations of the CWA are alleged – those on April 24 and July 8, 2025, when testing allegedly showed elevated *E. coli* levels in the Unnamed Tributary. The Amended Complaint therefore fails to state a claim of continuing violation of the CWA upon which relief can be granted.

Respectfully submitted,

*/s/ Sarah M. Ingalls*
Richard L. Colbert (#009397)
William L. Penny (#009606)
Sarah M. Ingalls (#038383)
THOMPSON BURTON, PLLC
Palmer Plaza
1801 West End Ave, Suite 1550
Nashville, Tennessee 37203
Telephone: (615) 465-6000
Facsimile: (615) 807-3048
rcolbert@thompsonburton.com
bpenny@thompsonburton.com
singalls@thompsonburton.com

*Attorneys for Defendants Water and Wastewater Authority of Wilson County and Adenus Operations, LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on December 29, 2025, a copy of the foregoing was filed electronically with the Clerk's office and served upon all parties using the Court's CM/ECF system through their counsel of record as indicated below:

Stephanie Biggs
George Nolan
1033 Demonbreun Street
Suite 205
Nashville, TN 37203
sbiggs@selc.org
gnolan@selc.org

James S. Whitlock
48 Patton Avenue, Suite 304
Asheville, NC 28801
jwhitlock@selc.org

*/s/ Sarah M. Ingalls*
Sarah M. Ingalls